UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MARK STEPHEN SULLIVAN,

     Plaintiff,

v.                                  Case No:   5:15-cv-56-Oc-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## OPINION AND ORDER

Plaintiff, Mark Stephen Sullivan, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits ("DIB").  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

### I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

#### A.  Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382a(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B.  Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that he is not undertaking substantial gainful employment.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments.  *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii).  If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled.  20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii).  If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work.  *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work.  20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f).  If the claimant can still perform his past relevant work, then he will not be found disabled.  *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience.  *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant.  *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989).  There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert.  *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C.  Procedural History

On March 4, 2011, Plaintiff filed an application for a period of disability and disability insurance benefits alleging disability beginning February 13, 2006.  (Tr. 16, 186-88, 250). Plaintiff's application was denied initially on November 2, 2011, and on reconsideration on January 25, 2012.  (Tr. 114, 125).  A hearing was held before Administrative Law Judge Mary C. Montanus (the "ALJ") on February 26, 2013.  (Tr. 35-74).  On June 14, 2013, the ALJ issued a decision finding that Plaintiff was not disabled.  (Tr. 16-28).  Plaintiff appealed the ALJ's decision and the Appeals Council denied Plaintiff's request for review on December 10, 2014.  (Tr. 3). Plaintiff initiated the instant action by filing a Complaint (Doc. 1) on February 6, 2015.  The parties having filed memorandum in support of their positions, this case is ripe for review.

### D.  Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that although Plaintiff worked in several capacities after his February 13, 2006, alleged onset date, this work did not rise to the level of substantial gainful activity through his date last insured of December 31, 2011.  (Tr. 18).  At step two, the ALJ found that Plaintiff had the following severe impairments:  obesity, diabetes mellitus with sensorimotor polyneuropathy of the lower extremities; status post a non-dominant cerebrovascular accident (CVA); degenerative disc disease of the cervical and lumbar spine; and

depressive disorder.  (Tr. 19).  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> perform a range of sedentary work as defined in 20 C.F.R. § 404.1567(a). The claimant is capable of standing and walking for 2 hours in an 8 hour workday, and sitting for 6 hours in an 8 hour workday, but requires the opportunity to change positions from sitting to standing every hour for 5 minutes while on tasks.  The claimant should avoid climbing ladders, ropes, and scaffolds, overhead work, crawling, balancing and working at heights or with dangerous moving machinery.  The claimant is limited to occasional stooping, crouching, kneeling, and climbing stairs.  He should use stairs only when a handrail is present.  He must also avoid excessive vibration or extremes of cold temperatures.  The claimant cannot constantly handle or finger.  Mentally, the claimant is limited to performing simple, routine, and repetitive tasks with only occasional change in the workplace and only occasional superficial interaction with the public.

(Tr. 21).  At step four, the ALJ found that Plaintiff was unable to perform his past relevant work. (Tr. 26).

At step five, the ALJ found relied upon the testimony of a vocational expert ("VE") and found that an individual with Plaintiff's age, education, work experience and RFC could work as a surveillance system monitor, addresser, and document preparer.  (Tr. 27).  The ALJ concluded that Plaintiff was not under a disability at any time from February 13, 2006, the alleged onset date, through December 31, 2011, the date Plaintiff was last insured.

## II.    Analysis

Plaintiff raises two issues on appeal: (1) whether the ALJ erred by failing to apply the correct legal standards to the opinion of Plaintiff's treating physician, Dr. Singh; and (2) whether

the Appeals Council erred by failing to apply the correct legal standard.  (Doc. 18 p. 1).  The Court

will address each issue in turn.

### a)  Whether the ALJ erred by failing to apply the correct legal standards to the opinion of Plaintiff's treating physician, Dr. Singh.

Plaintiff argues the ALJ failed to apply the correct legal standards to Dr. Singh's opinions.

(Doc. 18 p. 11).  Specifically, Plaintiff contends that the reasons given by the ALJ for according

Dr. Singh's opinions regarding total disability "little weight" are not supported by substantial

evidence.  (Doc. 18 p. 11).  According to Plaintiff, the ALJ "cherry-picked" evidence that

supported his finding while ignoring portions of Dr. Singh's treatment notes that supported Dr.

Singh's opinions.  (Doc. 18 p. 11-12).

In response, Defendant argues that the ALJ accorded proper weight to Dr. Singh's opinion

for several reasons.  First, Defendant contends that Dr. Singh did not assess any specific functional

limitations, but simply opined that Plaintiff is disabled or unable to work.  (Doc. 21 p. 4-5).  Such

opinions, Defendant argues, are on an issue reserved to the Commissioner and are due no special

significance.  (Doc. 21 p. 5).  Second, Defendant argues that Dr. Singh failed to identify objective

data supporting his opinion.  (Doc. 21 p. 6).  Finally, Defendant argues that the ALJ did not

"cherry-pick" Dr. Singh's treatment notes, but articulated good cause, supported by substantial

evidence, for according the Dr. Singh's opinion little weight.  (Doc. 21 p. 7).

Before addressing the parties' arguments, the Court will review the medical evidence from

Dr. Singh.  The record reveals that Plaintiff first presented to Arun K. Singh, M.D., on November

18, 2010, for an initial neurological evaluation.  (Tr. 434-436, 467-469, 485-487).  Plaintiff

reported complaints of neck pain, back pain, and numbness/tingling feeling in his ankles and feet.

(Tr. 434, 467, 485).  Physical examination revealed that Plaintiff's cervical, thoracic, and lumbar

spines were stiff and tender with restricted range of motion.  (Tr. 435, 468, 486).  Dr. Singh noted

spasms of the cervical paraspinal muscles and acute tenderness over C3/4, C4/5, C5/6, and C6/7. (Tr. 435, 468, 486).  Straight leg raise testing was positive at twenty degrees on the right side and at forty degrees on the left side.  (Tr. 435, 468, 486).  Dr. Singh noted spasms of the lumbar paraspinal muscles and acute tenderness over L2/3, L3/4, L4/5, and L5/S1.  (Tr. 435, 468, 486). He further noted that Plaintiff's gait was slow and limping.  (Tr. 436, 469, 487).  Dr. Singh's assessment was neck pain, cervical spondylosis without myelopathy, low back pain, and migraine headache.  (Tr. 436, 469, 487).

On February 3, 2011, Plaintiff returned to Dr. Singh for a follow-up appointment (Tr. 431-433, 482-484).  He reported that his leg pain had worsened and it made it difficult to walk (Tr. 431, 482).  Physical examination revealed power of 4+/5 in left arm and 4/5 in the left leg (Tr. 433, 484).  Dr. Singh noted that Plaintiff's gait was slowing, limping, and left hemiparetic.  (Tr. 433, 484).  Sensory examination was impaired for light touch, pin-prick, temperature, and vibration in the left arm and right leg.  (Tr. 433, 484).  Dr. Singh noted that Plaintiff had a new onset of mild but definite weakness of the left side of his face, body, arm, and leg.  (Tr. 433, 484). It was worse in his leg than his arm which indicated a lesion in the right ACA.  (Tr. 433, 484).  Dr. Singh believed that Plaintiff had suffered a stroke and ordered an MRI of his brain and a carotid ultrasound study.  (Tr. 433, 484).

On July 27, 2011, Dr. Singh completed a Treating Source Mental Status Report that was sent to him by Disability Determination Services.  (Tr. 544-546).  He noted that Plaintiff's mood and affect revealed mild anxiety.  (Tr. 544).  Plaintiff's concentration and memory were fair and his orientation was normal.  (Tr. 545).  Dr. Singh further noted that Plaintiff did not experience any hallucinations or perceptual disturbances.  (Tr. 545).  He noted that Plaintiff's behavior was impaired and his diagnoses included diabetic neuropathy and a non-dominant stroke.  (Tr. 545).

Dr. Singh believed that Plaintiff was competent to manage his own funds.  (Tr. 546).  He opined

that Plaintiff was incapable of sustaining work activity for eight hours a day, five days a week due

to his poor general health, diabetes, and small stroke.  (Tr. 546).

On July 27, 2011, Dr. Singh also completed a Supplemental Mental Impairment

Questionnaire that was sent to him by Disability Determination Services (Tr. 547).  He noted that

he did not feel as though Plaintiff suffered from a mental impairment that significantly interfered

with his daily functioning and no medication had been prescribed for a mental impairment.  (Tr.

547).

On August 1, 2011, Plaintiff returned to Dr. Singh for a follow-up appointment.  (Tr. 587-

589).  Plaintiff reported that his feet felt like someone was squeezing them with pliers and he

reported sharp pains in his feet, ankles, and both wrists.  (Tr. 587).  Plaintiff reported that the arches

of his feet felt like he was walking on golf balls and his feet were extremely sensitive.  (Tr. 587).

Dr. Singh recommended that Plaintiff gradually increase his prescription for Cymbalta for his

severe neuropathic pain.  (Tr. 589).  Dr. Singh opined that Plaintiff "remains disabled due to severe

diabetic neuropathy."  (Tr. 589).

In her decision, the ALJ explained the weight she accorded Dr. Singh's opinions as

follows:

> In determining the residual functional capacity, the undersigned has
> considered the medical opinion evidence.  Treating physician Dr. Singh
> had opined that claimant was disabled due to his stroke and diabetes
> (Exhibit 12F), and diabetic neuropathy (Exhibit 20F/13).  The undersigned
> affords Dr. Singh's opinions regarding total disability little weight, as it is
> inconsistent with his physician examination findings in his treatment
> records.  There is electrodiagnostic evidence of polyneuropathy of the legs
> from 2011 (Exhibit 4F), and treatment notes indicate a residual sensory
> deficit in the left lower extremity; however, Dr. Singh consistently noted
> that the claimant retained 5/5 power in both his arms and legs; his muscle
> tone was normal as was his coordination; and there was no evidence of
> involuntary movements, no gait ataxia or tremors.  Also, Dr. Ollvier noted

no evidence of a neurological or musculoskeletal abnormality in December 2012 (Exhibit 26F).  Further, pain management records show the claimant drove, was functional overall, and was well maintained on medication (Exhibit 21F).

(Tr. 24-25).  As to Dr. Singh's medical records and clinical findings, the ALJ explained that she accorded such evidence "significant weight."  (Tr. 25).

"Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability."  *Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).  The opinion of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Id.* at 1241.  An ALJ may decline to give controlling weight to a treating source's opinion when it is not supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2).  The ALJ's good cause finding must be clearly articulated.  *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing *Phillips*, 357 F.3d at 1240-41).

In this case, the Court finds that the ALJ's decision to accord "little weight" to Dr. Singh's disability opinions was supported by substantial evidence.  As the ALJ noted, despite Dr. Singh's opinion that Plaintiff is incapable of working, Dr. Singh's treatment notes reveal that Plaintiff consistently had full 5/5 power; his muscle tone and coordination were normal; and there was no evidence of involuntary movements, gait ataxia, or tremors.  (Tr. 457-59, 482-84, 485-87, 579-80, 582-83, 584-86, 587-89).  The ALJ further noted Plaintiff's pain management records which reveal

- 9 -

that from May 2011 through shortly after his date last insured, Plaintiff reported that he was working full-time, was able to drive despite his lower extremity impairment, was functional overall, and that he was maintained on his medication.  (Tr. 595, 601, 604-06).

Despite Plaintiff's arguments, the Court does not find that the ALJ erred by "cherry picking" the record and ignoring portions of Dr. Singh's treatment notes that do not support the ALJ's decision.  The ALJ stated that she carefully considered all the evidence and engaged in a thorough discussion of Dr. Singh's treatment records in determining Plaintiff's RFC.  *See* (Tr. 22-24).  Even while explaining her decision to accord "little weight" to Dr. Singh's opinion, the ALJ acknowledge that "[t]here is electrodiagnostic evidence of polyneuropathy of the legs from 2011," thus evincing that the ALJ did not unfairly ignore evidence that supported Dr. Singh's opinion.  In any event, the ALJ did not err by failing to discuss every aspect of the treatment records from Dr. Singh as long as the Court can, as is the case here, determine that the ALJ considered the Plaintiff's medical condition as a whole.  *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The Court acknowledges that Plaintiff is correct that the ALJ impermissibly relied on the fact that medical evidence from December 2012 showed no evidence of neurological or musculoskeletal abnormality given that this evidence related to a time period after Plaintiff's date last insured of December 31, 2011.  *See Hughes v. Comm'r of Soc. Sec. Admin.*,486 F. App'x 11, 13-14 (11th Cir. 2012).  However, as the ALJ's decision to accord "little weight" to Dr. Singh's opinions are otherwise supported by substantial evidence, the Court finds that remand would serve no purpose.

Where an ALJ's decision is supported by substantial evidence, the Court must affirm even if it would resolve disputed factual issues differently.  *See Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990).  As the ALJ's decision to accord Dr. Singh's opinion "little weight" is supported by substantial evidence, the Court will not disturb the ALJ's finding on appeal.

> **b)  Whether the Appeals Council erred by failing to apply the correct legal standard.**

Plaintiff argues that remand is necessary because the Appeals Council failed to follow the correct legal standards in considering evidence presented to it for the first time after the ALJ entered her decision.  (Doc. 18 p. 17).  Specifically, Plaintiff contends that the Appeals Council should not have denied review because the additional evidence, a vocational report completed on October 8, 2013, by Dr. Flora Ann Pinder, a certified vocational evaluator/expert, demonstrates that there is "a conflict between the limitations imposed by the ALJ and the requirements of the job cited by the vocational expert as set forth by the DOT."  (Doc. 18 p. 16) (quoting Tr. 372).  Thus, Plaintiff argues, he met his burden of proving that he was unable to perform the jobs suggested by the vocational expert at the hearing.  (Doc. 18 p. 17).

Defendant responds that the additional evidence submitted to the Appeals Council does not warrant remand because there is no conflict between the vocational expert's testimony that Plaintiff can perform unskilled jobs requiring simple, routine, repetitive tasks and the DOT providing that those jobs have a reasoning level of 2 or 3.  (Doc. 21 p. 15).  Additionally, Defendant argues that there is no merit to Dr. Pinder's argument that the ALJ should have included Plaintiff's moderate difficulties in concentration, persistence, or pace in the RFC finding.  (Doc. 21 p. 18).

In this case, as noted above, Plaintiff submitted a report by vocational evaluator/expert Dr. Flora Ann Pinder dated October 8, 2013, to the Appeals Council.  (Tr. 371-82).  In the report, Dr. Pinder opined that there was a conflict between the limitations imposed by the ALJ and the requirements of the jobs cited by the vocational expert as set forth by the Dictionary of Occupational Titles ("DOT").  (Tr. 372).  Specifically, Dr. Pinder opined that the ALJ's finding

that Plaintiff was limited to performing simple, routine, repetitive tasks, which is equivalent to a Reasoning Development Level of One (1). (Tr. 371). Dr. Pinder noted that the jobs cited by the vocational expert at the hearing required a Reasoning Development Level of Two (2) or Three (3). Thus, according to Dr. Pinder, given Plaintiff's RFC, he would not be able to work the jobs listed by the vocational expert because he did not have the requisite Reasoning Development Level. (Tr. 371-72). In addition, Dr. Pinder opined that while the ALJ found that Plaintiff had moderate limitations with concentration, persistence, or pace, the ALJ did not include these limitations in his RFC finding. (Tr. 372). According to Dr. Pinder, any significant limitations in concentration, persistence, or pace would prevent a worker from performing substantial gainful activity regardless of his or her ability to perform simple, routine, repetitive work. (Tr. 372).

A claimant is generally permitted to present new evidence at each stage of his administrative process. *Ingram v. Comm'r of Soc. Sec.,* 496 F.3d 1253, 1261 (11th Cir.2007). Evidence submitted for the first time to the Appeals Counsel is determined under a Sentence Four analysis. *Id.* at 1262. The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case "if the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Id.* at 1261 (citing 20 C.F.R. §§ 404.970(b)).

The Court begins its analysis by noting that, as conceded by Plaintiff, there is no requirement for the Appeals Council to provide a detailed explanation of a claimant's newly submitted evidence when it denies a request for review. *See Mitchell v. Comm'r, Soc. Sec. Admin.,* 771 F.3d 780, 783-85 (11th Cir. 2014). In this case, the Appeals Council specified that it received and considered the report by Dr. Pinder, but that it nevertheless found no reason to review the

ALJ's decision.  (Tr. 3-7).  The operative question, then, is whether the ALJ's decision is contrary to the weight of the evidence, including Dr. Pinder's report.

In this case, the Court finds that remand is appropriate due to Dr. Pinder's opinion concerning Plaintiff's moderate limitations in concentration, persistence, or pace.  In *Winschel v. Comm'r of Soc. Sec.*, the Eleventh Circuit held that an ALJ erred by relying on the testimony of a vocational expert who answered a hypothetical question that failed to include or otherwise account for the ALJ's step two finding that the claimant had moderate limitation in concentration, persistence or pace.  631 F.3d at 1180-81.  The Eleventh Circuit explained, "because the ALJ asked the vocational expert a hypothetical question that failed to include or otherwise implicitly account for all of Winschel's impairments, the vocational expert's testimony is not 'substantial evidence' and cannot support the ALJ's conclusion that Winschel could perform significant jobs in the national economy."  *Id.* at 81.

In this case, the hypothetical questions posed by the ALJ to the vocational expert failed to specify the ALJ's step two finding that Plaintiff had moderate limitation in maintaining concentration, persistence, or pace.  *See* (Tr. 68-71).  In addition, Plaintiff's limitation in maintaining concentration, persistence, or pace was also not implicitly accounted for in the hypothetical.  Thus, the vocational expert's testimony is not "substantial evidence" and does not support the ALJ's step five finding that Plaintiff can perform a significant number of jobs in the national economy.  The Court finds that the Appeals Council erred by denying review.  The Court finds it appropriate to remand this case to the ALJ with directions that the ALJ pose a hypothetical question to a vocational expert that specifically accounts for Plaintiff's moderate limitation in maintaining concentration, persistence, and pace, and for the ALJ to consider and discuss Dr. Pinder's opinion.

**III.     Conclusion**

The decision of the Commissioner is **REVERSED AND REMANDED**.  The Clerk of the

Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on March 18, 2016.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties